## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

MONROE BERNARD WASHINGTON,
aka KEITH E. WASHINGTON,

     Plaintiff,

     v.

MD DPSCS AGENTS AND SUPERVISORY
OFFICIALS  et al.,

     Defendants.

Civil Action No.:  SAG-22-2424

## MEMORANDUM OPINION

Plaintiff Keith E. Washington filed this lawsuit against Defendants Sergeant Brian Lewis, Sergeant Allen Graham, Lieutenant Vaughn Whiteman, Chief of Security Ronald Stotler, and Assistant Warden Keith Arnold (collectively, "Defendants"). ECF 7. Defendants filed a motion to dismiss Plaintiff's second amended complaint, or in the alternative, for summary judgment, ECF 32, which was supplemented, ECF 45. Plaintiff opposed the motion. ECF 35, 37,[1] 49, 50.[2] Defendants filed a Reply, ECF 41, 51, and Washington filed a Surreply, ECF 53, which Defendants

---

[1] In "Plaintiff's Motion to Oppose Defendants' Motion for Summary Judgment," Washington asserts, for the first time, allegations regarding "funds missing" from his "account" and retaliatory actions against him by Defendants after he asked for an investigation regarding the missing funds. ECF 37; ECF 37-3. None of these allegations are properly before the Court in this case because they were not included in the operative pleading, ECF 7, and an opposition to a dispositive motion is not a vehicle for amending a pleading. *See Woodbury v. Victory Van Lines*, 286 F. Supp. 3d 685, 692 (D. Md. 2017) ("axiomatic" that plaintiff may not use memorandum in opposition to amend complaint); *Allegis Grp., Inc. v. Bero*, 689 F. Supp. 3d 81, 142 (D. Md. 2023) (same); *Potts v. DiPaola*, RDB-21-1073, 2022 WL 616814, at *3 (D. Md. Mar. 2, 2022) ("The Court may not address new claims raised in opposition to a dispositive motion, because it is not a vehicle for amending the complaint.") ; *see also Zachair Ltd. v. Driggs*, 965 F. Supp. 741, 748 n.4 (D. Md. 1997) (a plaintiff "is bound by the allegations contained in its complaint and cannot, through the use of motion briefs, amend the complaint"), *aff'd,* 141 F.3d 1162 (4th Cir. 1998).

[2] In "Plaintiff's Reply to Defense's Supplemental Motion to Dismiss, or in the Alternative, for Summary Judgment," Washington refers to an altercation in August 2024, which is the subject of

move to strike, ECF 54. This Court has reviewed the briefing, and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2023). For the reasons that follow, Defendants' Motion, ECF 32, shall be granted.

## I.     BACKGROUND

The following facts are viewed in the light most favorable to Washington, the non-moving party. Washington, a Division of Correction inmate presently housed at North Branch Correctional Institution ("NCBI") in Cumberland, Maryland, filed the above-captioned civil rights complaint pursuant to 42 U.S.C. §1983, as amended, against Defendants Sgt. Brian Lewis, Sgt. Allen Graham, Lt. Vaughn Whiteman, Chief of Security Ronald Stotler, and Assistant Warden Keith Arnold.[3] ECF 7 at 1-2. He alleges that his grievances and mail alerting prison staff to a pervasive risk of harm were not properly processed, ultimately leading to his being assaulted by another inmate in August 2022 due to Defendants' failure to protect him from harm. ECF 7 at 3-4. He also claims that his right to freely practice his religion has been violated, his mail has been held, he has

---

Civil Action No. SAG-24-1097 and is also not properly before the Court in this case. *See Woodbury*, 286 F. Supp. 3d at 692. ECF No. 50 at 3. Nevertheless, Defendants responded to this allegation providing affidavits from the officers on duty and video of the August 2024 altercation. ECF 51-3 ¶¶ 5-8; ECF 51-4 ¶¶ 2, 5-8; ECF 51-1, Video B (under seal). In his response to Defendants' reply, which Defendants move to strike as an unauthorized surreply, ECF 54, Washington states that he did not intend to bring the August 2024 altercation before the Court in this case and asks that references to that incident and the defense exhibits regarding that incident, ECF 51-1 to ECF 51-5, not be considered and be stricken from the record. ECF 53 at 5-6. The Court declines to strike the exhibits but agrees that the August 2024 assault is not properly before the Court in this case, and the evidence surrounding that assault will not be considered here. Defendants' Motion to Strike the Surreply, ECF 54, is denied. While no party is entitled to file a surreply unless otherwise ordered by the Court, Local Rule 105.2(a) (D. Md. 2023), here, the surreply will be permitted because it addresses issues raised for the first time in Defendants' reply, ECF 51, regarding Washington's failure to exhaust administrative remedies. *See Lewis v. Rumsfeld*, 154 F. Supp. 2d 56, 61 (D.D.C. 2001) (holding a surreply is most often permitted when the moving party must respond to matters raised for the first time in a reply).

[3] The Clerk is directed to amend the docket to reflect the full and correct spellings of Defendants' names.

been retaliated against, the administrative remedy process was mismanaged, and Defendants have not complied with federal PREA directives. *Id*. at 5-8.

### A. August 2022 Incident

In support of his claims, Washington states that in June of 2022, he filed complaints and grievances that were "not returned, or answered at every level." *Id*. at 3. Washington also alleges that he was stabbed and assaulted in August 2022 due to unspecified "officers knowingly, neglectfully opening [his] cell door. *Id*. at 3-4, 5. Prior to the attack, Washington alleges that he filed grievances regarding "the overall practice of allowing inmates to have control over other inmates" and regarding staff corruption. *Id*. at 4. Washington advised Defendant Whiteman that another inmate, the tier representative, threatened to fight Washington and have him removed from the tier. *Id*. 4-5. On or about August 18, 2022, Washington placed "request slips" in his door addressed to Defendants Lewis, Graham, Whiteman, and the "Security Chief." *Id*. at 5.

Washington appears to identify Defendants Lewis, Graham, and Whiteman as "supervisors" for the housing unit where he was allegedly stabbed and assaulted. *Id*. at 3. Washington also alleges that the "Security Chief" was "responsible for the overall safety and security of the entire prison population," and that all Defendants, "who are supervisors," had knowledge of the threat to Washington's safety prior to his being stabbed and "did nothing" to protect him. *Id*. at 6.

An NCBI Serious Incident/Use of Force Report was generated following the August 26, 2022, incident. ECF 32-7 ¶¶ 7, 8; ECF 43-1. According to the report, on that day, the cell doors on Housing Unit 2, D-Wing were opened for inmates to attend Friday Sunni Service. ECF 43-1 at 4. As the doors opened, Officer Gerald Wolfe saw two inmates enter Washington's cell and assault him. *Id*. Wolfe immediately called for assistance and then went to the cell, where he ordered the

inmates to stop fighting and get on the floor. *Id*. The two assailants obeyed the order. *Id*. Officer Wolfe secured one of the assailants and escorted him to a holding cell. *Id*. Other officers secured the second assailant and escorted him to a strip cage. *Id*. Officer Kitzmiller, who had responded to Officer Wolfe's call for assistance, secured Washington and escorted him to the medical room, where he was treated for a slight puncture wound to his left upper forehead then cleared to return to his cell. *Id*. at 4, 20, 25-27. A search of the cell uncovered a homemade weapon, which one of the assailants admitted to owning and using during the assault. *Id*. at 4, 6, 35. Washington refused to provide any statement regarding the incident. *Id*. at 8. The inmates who attacked Washington were charged with inmate rule violations. *Id*. at 14-19.

Defendants Lewis, Graham, Stotler, and Whiteman submitted declarations in support of Defendants' motion. ECF 32-3, 32-4, 32-5, 32-7. Defendant Lewis was the Officer in Charge of Housing Unit 2, and Defendant Graham was assigned to work in that housing unit on August 26, 2022. ECF 32-3 ¶ 2 (Lewis Decl.); ECF  32-4 ¶ 2 (Graham Decl.). However, Defendant Graham was not working on that date. ECF No. 32-4 ¶ 8. Additionally, Defendants Lewis and Graham deny ever receiving any correspondence from Washington, and neither was aware, prior to August 26, 2022, of any threat to Washington's safety. ECF  32-3 ¶ 5; ECF 32-4 ¶¶ 4-6. Defendants Lewis and Graham each explain that had they received information regarding a threat to Washington's safety, they would have discussed the issue with their supervisor and, if warranted, taken measures to protect Washington's safety. ECF 32-3 ¶ 5; ECF 32-4 ¶ 7.

In August 2022, Defendant Ronald Stotler was Security Chief at NCBI. ECF 32-5 ¶ 2. Defendant Stotler was not aware of a threat of harm to Washington, was not working the day of the incident in question because he was away from August 19-29, 2022. *Id*. ¶ 5; ECF 32-6. While

Defendant Stotler states that his office received an inmate slip from Washington on August 23, 2022, Defendant Stotler does not know "when or how the slip was received, or by whom." *Id*. ¶ 4.

Defendant Whiteman was the Housing Unit Manager of NCBI Housing Unit 2 until approximately January 11, 2022, but he was no longer in that role in August of 2022 and was not working at NCBI on August 26, 2022. ECF 32-7 ¶¶ 2, 3, 8. Defendant Whiteman never received any correspondence from Washington. *Id*. ¶ 5. In August of 2022, Defendant Whiteman's office did not receive any correspondence regarding a threat to Washington. *Id*. Defendant Whiteman specifically denies being aware of any threat to Washington before the August 26, 2022, incident. *Id*. ¶ 6. Had he been informed of a threat, he avers that he would have discussed the matter with Defendant Stotler and ordered an investigation; had it been a credible threat, he would have taken measures to protect Washington. *Id*.

In August of 2022, Defendant Arnold was the Assistant Warden of NBCI. ECF 32-8 ¶ 2. Neither Arnold nor anyone in his office received any correspondence from Washington regarding a threat to Washington's safety. *Id*. ¶ 4. Arnold specifically denies being aware of a risk of harm to Washington prior to the August 26, 2022, incident. *Id*. ¶ 5. Had Washington advised him of a threat to his safety, Arnold avers that he would have discussed the concerns with Defendant Stotler and directed an investigation. If the threat was determined to be credible, Arnold would have then taken measures to secure Washington's safety. *Id*.

F. Todd Taylor, Director of the Inmate Grievance Office ("IGO"), avers that he reviewed the IGO's records and found that Washington did not file any grievances complaining that employees of the Department of Public Safety and Correctional Services ("DPSCS") failed to protect him from an August 2022 assault, interfered with his religious practices, or failed to follow PREA protocols. ECF 45-1 ¶ 3.

**B.  Washington's Grievances**

In his opposition to Defendants' motion, Washington attached copies of Administrative Remedy Procedure ("ARP") complaints he claims to have filed, which he asserts support his claims that Defendants were aware of the risk to his safety. ECF 35 at 2; ECF 35-1 to 35-6, 35-8.

In ARP No.140389 dated March 11, 2022, Washington alleged that he had filed "several requests to many different individuals that are supervisors here at your facility" and did not receive a reply.  ECF  35-1; ECF  35-9 (duplicate). The ARP does not provide additional detail regarding the "requests," This ARP does not display a case number and does not reference any of the Defendants named in the Amended Complaint, ECF 7. *Id*.

In ARP No. 0139459 dated March 24, 2022, Washington complained that the Chief of Security and "others" refused his request for the phone number of the FBI, alleged that the institution violated PREA, and retaliated against Washington for having reported sexual abuse. ECF  35-2. This ARP does not display a case number and does not contain any information regarding the PREA violations or the alleged retaliation or specifically name any of the Defendants in this case. *Id*.

In ARP No. 0139342, NBCI-0845-22, filed May 8, 2022, Washington asserted that "mailroom staff" violated federal law regarding the delivery of "legal" and "residential mail." ECF 35-3.  Washington alleged that he mailed documents to the federal court in Minnesota two months prior to filing this ARP but never received confirmation that the court received his documents. *Id*. He also alleged that his family had not received mail he sent to them. *Id.* The ARP did not assert any claims regarding any of the Defendants in this case. *Id.* After review,  this ARP was dismissed pursuant to COMAR 12.02.08 on May 27, 2022, and Washington was advised that an investigation

revealed that NBCI staff processed mail in accordance with policy. *Id*. On June 10, 2022, Washington appealed the dismissal, ECF 45-1 at 4-5. On June 23, 2022, the Inmate Grievance Office informed Washington that he had failed to provide required paperwork, including any response from the Warden or any appeal or response from the Commissioner, and that the grievance would be dismissed without further notice if the missing paperwork or an explanation was not provided within thirty days of the letter. *Id*. at 2-3. A search of available records confirmed that Washington did not file any ARP appeals before October 4, 2023.  ECF 45-2 at ¶ 3.

On July 23, 2022, Washington submitted an "Inmate Request" wherein he stated that he had requested "many things from your dept, subordinates at every level without a reply."  ECF 35-4. Specifically, he noted that he was an Interstate Corrections Compact ("ICC") transfer and was "subjected to double bunking," which he claimed was "outlawed" by the Governor of Minnesota. *Id*. He also questioned why he was "subjected to MAX II and post administrative segregation." *Id*. He inquired why his "catalog order" was not processed and why he had to deal with "attitude, rude, ignorant, case manager." *Id*.  The "Inmate Request" did not identify any of the Defendants in this and did not provide any details regarding Washington's enumerated concerns. *Id*. A response was provided to Washington on August 9, 2022, addressing his concerns about his catalog orders. *Id*.

In ARP No. 0139358, NBCI-1475-22, filed on August 8, 2022, Washington requested that unidentified sergeants and lieutenants reply to requests he placed "regarding the overall running of the unit." ECF 35-5; ECF 50-1 (duplicate). He complained about inmates controlling other inmates, including "workers' unit rep. & his clique of drug dealing, extortionist partners that this unit supervisors turn a blind eye and deaf ear too." ECF 35-5. The ARP did not identify any threats against Washington. *Id*.  On August 9, 2022, the ARP coordinator directed Washington to refile the

ARP with additional information by August 24, including the name of the inmates he complained about. *Id.* He failed to do so. ECF 51-1 ¶ 3 & at 3.

On August 14, 2022, Washington filed ARP No. 0139356 requesting he be placed back in administrative segregation. ECF 35-6. Washington did not provide any information to support his request. He also asserted that his rights were being violated in part because of the policy of "doubling up" violent inmates. *Id.* The ARP does not identify any specific correctional staff but instead alleges "overall corruption" and the "abuse of authority" that would be brought to the court's attention. *Id.*

Washington filed ARP No. 173190, NCBI-1739-22 on September 12, 2022, regarding the August 26, 2022 attack and asserted a "set up by officers and supervisors alike," but did not name any of the Defendants in this case. ECF 51-1 at 2; ECF 50 at 7. The ARP was dismissed because the "subject matter" was "under investigation by the Department's Intelligence and Investigation Division," and Washington could appeal the decision to the Commissioner of Correction. ECF 51-1 at 2. Washington did not appeal the dismissal of this ARP to the Commissioner of Correction. ECF 51-2 ¶ 3. He filed the Complaint in this matter on September 23, 2022. ECF No. 1.

On June 8, 2023, Washington filed ARP No. 027549, NBCI-0673-23 stating that during the "2 p.m. count" on June 6, 2023, "Officer Kelly" refused to provide him multiple ARP forms, only giving him one. ECF 50-2 at 1. The ARP was dismissed with a finding that Washington had been provided only one ARP on June 7, 2023, because no other forms were available, and he was advised that additional ARPs would be available the next shift or day. *Id.* Washington signed for receipt of the ARP dismissal, ECF 51-1 at 9, and filed additional ARPs after June 7, 2023, as demonstrated by the record. On September 24, 2023, he appealed the dismissal of this ARP to the Commissioner, claiming he had not received a response to his initial ARP. ECF 50-4; ECF 51-2 ¶

3. He complained that "as is the case with all things, concerning the proper order of conducting business at this and every facility in Maryland I've resided at corruption, and evil prejudice is common…." ECF 50-4 at 1. The ARP appeal was dismissed as having been filed outside the established time frame. *Id*.

On June 27, 2023, Washington filed ARP No. 0176934, NBCI-0717-23 alleging that staff retaliated against inmates who use the ARP system and refused to provide ARPs to inmates. ECF 50-3 at 1. Washington was directed to resubmit the ARP with additional information, including the date of the alleged incident. *Id*. Washington instead appealed the dismissal to the Commissioner. ECF No. 51-2 ¶ 3. The ARP appeal was dismissed for "[f]ailure to resubmit the request in accordance with the coordinator's instructions." *Id*. at 7.

On November 21, 2023, Washington filed ARP No. 0220683, NBCI-1398-23, alleging that "Officer Kelly" retaliated against him by denying him ARPs and calling him a "snitch." ECF 50-5; ECF 51-1 at 4-5. The ARP was dismissed on November 28, 2023 as having "been previously addressed through Administrative Remedy Procedure, Case number: NBCI-1324-23," which Washington acknowledged by signing a receipt. ECF 51-1 at 4-6.

On December 8, 2023, Washington filed an ARP complaining about the conduct of his administrative segregation review hearing. ECF 35-8 at 1. Specifically, he alleged he had been cut off from explaining why his life was put in harm's way. *Id*. He also alleged that "Muslims and blood gang members" threatened him, "with the aid of Building two officers Wolf, Wagner, and Civincide." *Id*. at 3.

## II.    LEGAL STANDARDS

As permitted by Rule 12(d) Defendants seek dismissal pursuant to Rule 12(b)(6) or, in the alternative, summary judgment pursuant to Rule 56 and submitted declarations and other

documents with their motion. ECF 32, ECF 32-3 to 32-8, ECF 43-1. Summary judgment typically

is not granted "where the parties have not had an opportunity for reasonable discovery." *E.I. du

Pont de Nemours & Co. v. Kolon Indus., Inc*., 637 F.3d 435, 448–49 (4th Cir. 2011). However,

"where matters outside the pleadings are presented to and not excluded by the court, the motion

must be treated as one for summary judgment" under Rule 12(d) as long as all parties "have a

reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P.

12(d). Here, after receipt of Defendants' motion, the Clerk of this Court mailed a "Rule 12/56

letter" to Washington, alerting him to potential consequences of a failure to respond to the

Defendants' motion. ECF 33, 47. Washington submitted several filings captioned as or referencing

his opposition "Defendants' Motion to Dismiss, or in the Alternative, Summary Judgment," *see*

ECF 34, 35, 37, 49, 50. Washington also attached exhibits to his filings. Accordingly, this Court

deems it appropriate to consider attachments to both parties' briefing and to treat Defendants'

motion as a motion for summary judgment as to Washington's failure to protect claim under §

1983.[4] *See Laughlin v. Metro. Washington Airports Auth*., 149 F.3d 253, 260-61 (4th Cir. 1998);

*LaTisha P. v. Kijakazi*, 2022 WL 2153564, at *3 & n.2 (D. Md. June 13, 2022).

---

[4] In one of his many filings opposing Defendants' motion, Washington asserts that discovery is necessary because he filed an ARP regarding the August 2022 assault which was dismissed because the request was under investigation by another department. ECF 50 at 2, 7 (stating "this support[s] a much needed discovery."). To adequately raise the issue that discovery is needed, the non-movant typically must file an affidavit or declaration pursuant to Rule 56(d) explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery. FED. R. CIV. P. 56(d). Notably, "Rule 56(d) affidavits cannot simply demand discovery for the sake of discovery." *Hamilton v. Mayor & City Council of Baltimore*, 807 F. Supp. 2d 331, 342 (D. Md. 2011) (citation omitted). "Rather, to justify a denial of summary judgment on the grounds that additional discovery is necessary, the facts identified in a Rule 56 affidavit must be 'essential to [the] opposition.'" *Scott v. Nuvell Fin. Servs., LLC*, 789 F. Supp. 2d 637, 641 (D. Md. 2011), *rev'd on other grounds*, (alteration in original) (citation omitted). A non-moving party's Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trustees, Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995);

Pursuant to Fed. R. Civ. P. 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The Court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in [his] favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc*., 290 F.3d 639, 645 (4th Cir. 2002). Importantly, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).

The Court will review Washington's claims for regarding free exercise of his religion, mail tampering, denial of access to the courts, retaliation, and the PREA protocols under the motion to dismiss standard. In reviewing a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court accepts all well-pleaded allegations in the complaint as true and construes the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff. *See Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)); *Ibarra v. United States*, 120 F.3d 472, 473 (4th Cir. 1997). Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." *Migdal v. Rowe Price-Fleming Int'l Inc*., 248 F.3d 321, 325-26 (4th Cir. 2001); *see also Swierkiewicz v. Sorema N.A*., 534 U.S. 506, 513 (2002) (stating that a complaint need only satisfy the "simplified pleading standard" of Rule 8(a)).

---

*see Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 420 (D. Md. 2006), *aff'd*, 266 F. App'x. 274 (4th Cir.). Washington's request for discovery is denied because he fails to provide the requisite affidavit, but, more importantly, he fails to explain what specific evidence is necessary to his opposition and how such evidence would defeat summary judgment.

The Supreme Court of the United States explained a "plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). Nonetheless, the complaint does not need "detailed factual allegations" to survive a motion to dismiss. *Id.* at 555. Instead, "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.* at 563. To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not 'show[n]' -- 'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

In reviewing this motion, the Court also considers Plaintiff's self-represented status. While self-represented pleadings are liberally construed, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007), this Court maintains an "affirmative obligation . . . to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Baltimore Ravens Football Club, Inc*., 346 F.3d 514, 526 (4th Cir. 2003) (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)). Although the Court applies that more liberal standard in reviewing a self-represented plaintiff's response to a defendant's summary judgment motion, the plaintiff "may not rest on [his] pleadings, but must demonstrate that specific, material facts exist that give rise to a genuine issue" to be tried before a

jury. *Harleysville Mut. Ins. Co. v. Packer*, 60 F.3d 1116, 1120 (4th Cir. 1995) (citations omitted); *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994), *cert. denied*, 513 U.S. 813 (1994). Moreover, a federal court may not act as an advocate for a self-represented litigant. *See Brock v. Carroll*, 107 F.3d 241, 242–43 (4th Cir. 1996); *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990). Therefore, the court cannot "conjure up questions never squarely presented," or fashion claims for a plaintiff because he is self-represented. *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985); *see also Maryland v. Sch. Bd.*, 560 F. App'x 199, 203 n.4 (4th Cir. 2014) (unpublished) (rejecting self-represented plaintiff's argument that district court erred in failing to consider an Equal Protection claim, because plaintiff failed to allege it in the complaint).

## III.    DISCUSSION

### A.    DPSCS

To the extent Washington intended to name "MD DPSCS" as a Defendant, Defendants correctly argue that DPSCS, a state agency, Md. Code Ann., Corr. Servs. § 2-101, and the individual Defendants, to the extent they are sued in their official capacities as state employees, are immune from suit under the Eleventh Amendment to the United States Constitution. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *see also Clark v. Md. Dep't of Public Safety and Corr. Serv.*, 316 F. App'x 279, 282 (4th Cir. 2009) (DPSCS "undoubtedly an arm of the state for purposes of § 1983" and immune from suit; prison officers afforded immunity in their official capacities under the Eleventh Amendment). As such, Washington's clams asserted against MD DPSCS are dismissed. Washington's official capacity claims are dismissed as to all other Defendants.

### B.    Exhaustion of Administrative Remedies

Defendants raise the affirmative defense that Washington failed to exhaust his administrative remedies regarding his failure to protect and retaliation claims. ECF 45 at 4; ECF 51 at 3. The Prisoner Litigation Reform Act ("PLRA") provides, in pertinent part: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

For purposes of the PLRA, "the term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 42 U.S.C. § 1997e(h). The phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *see also Chase v. Peay*, 286 F. Supp. 2d 523, 528 (D. Md. 2003), *aff'd*, 98 F. App'x 253 (4th Cir. 2004).

The doctrine governing exhaustion of administrative remedies has been well established through administrative law jurisprudence. It provides that a plaintiff is not entitled to judicial relief until the prescribed administrative remedies have been exhausted. *Woodford v. Ngo*, 548 U.S. 81, 88-89 (2006). Therefore, a claim that has not been exhausted may not be considered by this Court. *See Jones v. Bock*, 549 U.S. 199, 220 (2007). In other words, exhaustion is mandatory, and a court ordinarily may not excuse a failure to exhaust. *See Ross v. Blake*, 578 U.S. 632, 639 (2016) (citing *Miller v. French*, 530 U.S. 327, 337 (2000) (explaining that "[t]he mandatory 'shall'… normally creates an obligation impervious to judicial discretion") (alteration in original)).

However, administrative exhaustion under § 1997e(a) is not a jurisdictional requirement and does not impose a heightened pleading requirement on the prisoner. Rather, the failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by defendants. *See Bock*, 549 U.S. at 215-216; *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.3d 674, 682 (4th Cir. 2005).

Ordinarily, an inmate must follow the required procedural steps to exhaust his administrative remedies. *Moore*, 517 F.3d at 725, 729; *see Langford v. Couch*, 50 F. Supp. 2d 544, 548 (E.D. Va. 1999) ("The … PLRA amendment made clear that exhaustion is now mandatory."). Exhaustion requires completion of "the administrative review process in accordance with the applicable procedural rules, including deadlines …." *Woodford*, 548 U.S. at 88. This requirement is one of "proper exhaustion of administrative remedies, which 'means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).'" *Id.* at 90 (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)). But the court is "obligated to ensure that any defects in [administrative] exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *see also Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006) (finding that "the inmate cannot be required to exhaust [administrative remedies] … when prison officials prevent inmates from using the administrative process").

DPSCS has an established "administrative remedy procedure" ("ARP") for use by Maryland State prisoners for "inmate complaint resolution." *See generally* Md. Code Ann., Corr. Servs. ("C.S."), § 10-201 *et seq.*; Md. Code Regs. ("COMAR") 12.07.01B(1) (defining ARP). The grievance procedure applies to the submission of a "grievance against an official or employee of the Division of Correction [DOC] …." C.S. § 10-206(a). Regulations promulgated by DPSCS

concerning the ARP process define a "grievance" to include a "complaint of any individual in the custody of the [DOC] against any officials or employees of the [DOC] arising from the circumstances of custody or confinement." COMAR 12.07.01.01(B)(7). To pursue a grievance, a prisoner confined in a Maryland prison may file a grievance with the IGO against any DOC official or employee. *See* C.S. § 10-206(a). When the ARP process provides a possible remedy, it must be followed and completed before an inmate may file a grievance with the IGO. However, if the prison has a grievance procedure that is approved by the IGO, the prisoner must first follow the institutional ARP process before filing a grievance with the IGO. *See* C.S. § 10-206(b).

The ARP process consists of multiple steps. Initially, a prisoner is required to file his initial ARP request with his facility's "managing official," COMAR 12.02.28.05(D)(1), which is defined by COMAR 12.02.28.02(B)(14) as "the warden or other individual responsible for management of the correctional facility" and defined under C.S. § 1-101(m) "as the administrator, director, warden, superintendent, sheriff, or other individual responsible for the management of a correctional facility." Moreover, the ARP request must be filed within 30 days of the date on which the incident occurred, or within 30 days of the date the prisoner first gained knowledge of the incident or injury giving rise to the complaint, whichever is later. COMAR 12.02.28.09(B).

The second step in the ARP process occurs if the managing official denies a prisoner's initial ARP or fails to respond to the ARP within the established time frame. The prisoner has 30 days to file an appeal to the Commissioner of Correction. COMAR 12.02.28.14(B)(5).

If the Commissioner of Correction denies an appeal, the prisoner has 30 days to file a grievance with the IGO. COMAR 12.02.28.18; C.S. § 10-206(a); COMAR 12.07.01.05(B).[5]

---

[5] If the Commissioner fails to respond, the grievant shall file an appeal within 30 days of the date the response was due. COMAR 12.07.01.05(B)(2).

When filing with the IGO, a prisoner is required to include copies of the following: the initial request for administrative remedy, the warden's response to that request, a copy of the ARP appeal filed with the Commissioner of Correction, and a copy of the Commissioner's response. COMAR 12.07.01.04(B)(9)(a).

If the grievance is determined to be "wholly lacking in merit on its face," the IGO may dismiss it "without a hearing …." C.S. § 10-207(b)(1); *see also* COMAR 12.07.01.06(B). An order of dismissal constitutes the final decision of the Secretary of DPSCS for purposes of judicial review. C.S. § 10-207(b)(2)(ii). However, if a hearing is deemed necessary by the IGO, the hearing is conducted by an administrative law judge with the Maryland Office of Administrative Hearings. *See* C.S. § 10-208; COMAR 12.07.01.07–.08. The conduct of such hearings is governed by statute. *See* C.S. § 10-208; COMAR 12.07.01.07(D); *see also* Md. Code Ann., State Gov't, § 10-206(a)(1).

A decision of the administrative law judge denying all relief to the inmate is considered a final agency determination. C.S. § 10-209(b)(1)(ii); COMAR 12.07.01.10(A)(2). However, if the ALJ concludes that the inmate's complaint is wholly or partly meritorious, the decision constitutes a recommendation to the Secretary of DPSCS, who must make a final agency determination within fifteen days after receipt of the proposed decision of the administrative law judge. *See* C.S. §§ 10-209(b)(2), (c); COMAR 12.07.01.10(B).

The statute provides for judicial review. C.S. § 10-210. But "[a] court may not consider an individual's grievance that is within the jurisdiction of the [Inmate Grievance] Office or the Office of Administrative Hearings unless the individual has exhausted the remedies provided" in C.S. §§ 10-201 through 10-210.

Here, the record shows that Washington filed only one grievance with the IGO concerning his claims of interference with mail, denial of access to the court, and retaliation in the form of

"sending-transporting me to the backwards state of Maryland." ECF 45-1 ¶ 3 & 4-5. That grievance was dismissed because Washington failed to follow instructions to provide documentation demonstrating that he had followed all steps in the ARP process before submitting his claim to the IGO. ECF No. 45-1 ¶ 3. Washington claims that ARPs he filed at the institutional level were removed from his cell door and not processed. ECF 50 at 9. He does not explain which ARPs he claims were not properly processed; the record shows ARPs filed by Washington that were processed at all levels: the facility, the Commissioner, and the IGO. *See, e.g.*, ECF 50-1 to 50-6; ECF 45-1 at 2-7; ECF 51-1 at 2-9; ECF 51-2. Under the regulations, if Washington's ARP was not timely processed at the facility, his next step was to file an appeal with the Commissioner before proceeding to the IGO, which he did not do. ECF 45-1; ECF 45-2 ¶ 3. Because Washington failed to exhaust available administrative remedies for his claims regarding free exercise of religion, mail tampering, retaliation, and PREA protocols, ECF 45-1, those claims are subject to dismissal. Nevertheless, because Washington contends, generally, that there were numerous irregularities in the grievance process, the Court will consider the merits of each of these unexhausted claims.

Additionally, as to Washington's failure to protect claim, the record demonstrates that Washington filed ARP NCBI-1739-22, which was dismissed because the matter had been referred to IID. ECF 51-1 at 2. Washington was advised that he "may appeal this decision to the Commissioner of Correction." *Id*. However, he did not do so. ECF 51-2 ¶ 3. Although the PLRA requires the prisoner to exhaust available remedies, "an administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore*, 517 F.3d at 725. Critically, the Fourth Circuit has held that "when there is an Intelligence and Investigative Division [("IID")] investigation into an officer's use of force, Maryland's scheme for administrative remedies is unavailable." *Younger v. Crowder*, 79 F.4th 373,

381 (4th Cir. 2023). "Under Maryland law, an inmate cannot successfully file an administrative grievance over an event that is the subject of an Intelligence and Investigative Division investigation. If they do, that grievance will automatically be dismissed as procedurally deficient." *Crowder* 79 F.4th at 380; *see also Sheppard v. Parson*, Civ. No. PX-21-1342, 2024 WL 943436, at *3 (D. Md. Mar. 4, 2024) ("Because [plaintiff's] ARP was procedurally dismissed while the IID investigation was pending, administrative remedies were unavailable to him. The Court will not grant judgment in Defendants' favor on exhaustion grounds.").

Given the IID investigation, the Court cannot say on the record before it that the administrative grievance process was available to Washington regarding his failure to protect claim. Accordingly, the Court will not dismiss this claim based on the failure to exhaust administrative remedies.

### C.  Failure to Protect

Defendants assert that Washington has failed to establish their personal participation in the events complained of or that supervisory liability exists, and they are entitled to summary judgment on the merits of Washington's failure to protect claim.

In a suit arising under 42 U.S.C. § 1983, liability attaches only upon a defendant's personal participation in the constitutional violation and the doctrine of respondeat superior generally does not apply.  *See Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985); *Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004). Liability of supervisory officials under § 1983 "is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (quoting *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)). To state a claim for supervisory liability under § 1983 based on a subordinate's

conduct, a plaintiff must allege that (1) the supervisor had actual or constructive knowledge that the subordinate's conduct "posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff"; (2) the supervisor responded in a manner that was so inadequate that it showed "deliberate indifference to or tacit authorization" of the subordinate's conduct; and (3) there was "an affirmative causal link between the supervisor's inaction" and the plaintiff's constitutional injury. *Timpson by & through Timpson v. Anderson Cnty. Disabilities & Special Needs Bd.*, 31 F.4th 238, 257 (4th Cir. 2022) (quoting *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994)).[6]

"The Eighth Amendment's prohibition on cruel and unusual punishments imposes certain basic duties on prison officials." *Raynor v. Pugh*, 817 F.3d 123, 127 (4th Cir. 2016) (citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). Those duties "include maintaining humane conditions of confinement, including the provision of adequate medical care and . . . 'reasonable measures to guarantee the safety of the inmates.'" *Id*. A two-part inquiry that includes both an objective and a subjective component must be satisfied before liability is established. *See Raynor*, 817 F.3d at 127.

Objectively, the prisoner "must establish a serious deprivation of his rights in the form of a serious or significant physical or emotional injury" or substantial risk of either injury. *Danser v. Stansberry*, 772 F.3d 340, 346-47 (4th Cir. 2014). The objective inquiry requires this Court to "assess whether society considers the risk that the prisoner complains of to be so grave that it

---

[6] To the extent Washington asserts that the denial of his ARPs and dismissal of his appeals imputes liability, he is mistaken, as such denials are insufficient to impute liability to Warden Arnold for the alleged constitutional violations. *See Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009) (allegation that warden "rubber stamped" grievances was not enough to establish personal participation) (citing *Whitington v. Ortiz*, 307 F. App'x 179, 193 (10th Cir. 2009) (unpublished) ("denial of the grievances alone is insufficient to establish personal participation in the alleged constitutional violations.")). As there are no other factual allegations as to Defendant Arnold, he is entitled to dismissal as to all claims.

violates contemporary standards of decency to expose *anyone* unwillingly to such a risk." *Helling v. McKinney*, 509 U.S. 25, 36 (1993).

Subjectively, a plaintiff must establish that the prison official involved had "a sufficiently culpable state of mind" amounting to "deliberate indifference to inmate health or safety." *Farmer*, 511 U.S. at 834. Evidence establishing a culpable state of mind requires actual knowledge of an excessive risk to the prisoner's safety or proof that prison officials were aware of facts from which an inference could be drawn that a substantial risk of serious harm exists, and that the inference was drawn. *Id*. at 837. A plaintiff may "prove an official's actual knowledge of a substantial risk 'in the usual ways including inference from circumstantial evidence" so that "a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Raynor*, 817 F.3d at 128.

Washington must prove that "the prison official must have both subjectively recognized a risk of substantial harm and subjectively recognized that his actions were inappropriate in light of that risk." *Campbell v. Florian*, 972 F. 3d 385, 395 (4th Cir. 2020) (citations and quotation marks omitted). Mere negligence in failing to protect an inmate from attack is insufficient to state an Eighth Amendment claim. *See United States v. Roberts*, 915 F. 2d 889, 891 (4th Cir. 1990); *Greyson v. Peed*, 195 F. 3d 692, 695 (4th Cir. 1999); *Pressly v. Hutto*, 816 F. 2d 977, 979 (4th Cir. 1987) (negligent failure of prison staff to protect inmate from attack by another inmate fails to state a claim); *Grieveson v. Anderson*, 538 F. 3d 763, 777 (7th Cir. 2008) (holding failure to move inmate to safe block where inmate failed to provide officials with specific threats to his safety was insufficient to provide deliberate indifference and proof of deliberate indifference required "more than a showing of negligent or even grossly negligent behavior….[T]he corrections officer must

have acted with the equivalent of criminal recklessness.") (quoting *Borello v. Allison*, 446 F. 3d 742, 747 (7th Cir. 2008).

Here, Washington alleges that "[a]ll defendants, who are supervisor's [sic] themselves, had prior knowledge of the threat to plaintiff's safety before he was stabbed and assaulted in his room, and with this knowledge, did nothing, although, individually, or collectively any one of these defendants' [sic] had the authority to place plaintiff in protective custody, but neglected too [sic] and or refuse [sic] to protect plaintiff, who was subsequently stabbed and assaulted." ECF 7 at 6. Washington does not allege, however, personal involvement by any of the Defendants in failing to protect him. The only facts Washington offers in support of his claim is that he placed slips in his door addressed to each sergeant in his unit. *Id*. at 5. Washington does not explain the contents of the slips and cannot establish that any of the named Defendants received these slips or were aware of any threat to his safety or any of his other concerns. Nonetheless, he claims that Defendants failed to prevent the August 2022 assault.[7] *Id*. at 5-7.

Defendants Lewis, Graham, Whiteman, Stotler, and Arnold each aver that they were not aware of any risk of harm to Washington, ECF 32-3 to 32-5, 32-7, 32-8, and Washington has failed to come forward with any evidence that they were. The record fails to demonstrate that any of the named Defendants knew or should have known that other inmates presented a risk to Washington's safety. Washington does not provide any information about who attacked him, nor is there any evidence that Defendants were aware that an attack was imminent. Washington has failed to allege,

---

[7] Additionally, the Court notes that Washington does not provide sufficient information regarding the August 2022 assault in the operative pleading, his Amended Complaint, ECF 7. He does not provide any information about his attacker or explain what information he possessed regarding the risk to his safety in August 2022 or otherwise. While Washington asserts in the Amended Complaint that the "tier rep[resentative]" approached his cell door to say that he would have the door opened so Washington could go into the mop closet to fight , ECF 7 at 4-5, Washington fails to connect this unidentified "tier rep[resentative]" with the attack on August 26, 2022.

much less establish, the type of subjective knowledge required to support a claim of deliberate indifference. Because there is no evidence that any named Defendant was actually or constructively aware of any of the other Defendants or subordinates' alleged misconduct, the supervisory Defendants could not have been deliberately indifferent to it. For the same reason, there are no facts to establish that the named Defendants had a sufficiently culpable state of mind, and Washington presents no evidence to contradict Defendants' affidavits.  As there are no genuine issues in dispute, Defendants are entitled to summary judgment on Washington's failure to protect claim.

### D.    RLUIPA and Free Exercise Claim

Washington bases his First Amendment claim on the failure to allow him to practice his religion. In support of this claim, he states that he is "a registered ordained minister" and was prevented from acting as a minster through his non-profit organization. ECF  7 at 7-8.

"Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *O'Lone v. Est. of Shabazz*, 482 U.S. 342, 348 (1987). With respect to the free exercise of religion, prison inmates retain a right to reasonable opportunities for free exercise of religious beliefs without concern for the possibility of punishment. *See Cruz v. Beto*, 405 U.S. 319, 322 (1972) (per curiam). But, that retained right is not unfettered. Prison restrictions that impact the free exercise of religion but are related to legitimate penological objectives do not run afoul of the Constitution. *See Turner v. Safley*, 482 U.S. 78, 89-91 (1987).

Inmates' religious practices are provided even greater protection under the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"). Therefore, if a plaintiff is unable to sustain his RLUIPA claim, there is no need for the court to consider separately the claim under the

First Amendment, as the claim will necessarily fail there too. *See, e.g.*, *Tillman v. Allen*, 187 F. Supp. 3d 664, 675 (E.D. Va. 2016); *Lovelace v. Lee*, 472 F.3d 174, 198 (4th Cir. 2006).

> In relevant part, RLUIPA states, 42 U.S.C. § 2000cc-1(a):

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution ..., even if the burden results from a rule of general applicability, unless the government demonstrates that the imposition of the burden on that person—

> (1) is in furtherance of a compelling governmental interest; and

> (2) is the least restrictive means of furthering that compelling governmental interest.

A plaintiff seeking relief under RLUIPA has the initial burden to show that the challenged policy "implicates his religious exercise." *Holt v. Hobbs*, 574 U.S. 352, 360 (2015). RLUIPA defines "religious exercise" as "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc–5(7)(A); *Holt,* 574 U.S. at 358.

Under RLUIPA, an inmate initially must show that the challenged policy substantially burdens the exercise of his "sincerely held religious beliefs." *Wright v. Lassiter*, 921 F.3d 413, 418 (4th Cir. 2019); 42 U.S.C. § 2000cc–2(b). A prison regulation imposes a substantial burden on religious belief when it places "substantial pressure on an adherent to modify his behavior and to violate his beliefs" or "forces a person to choose between following the precepts of [his] religion and forfeiting governmental benefits, on the one hand, and abandoning one of the precepts of [his] religion . . . on the other hand." *Lovelace*, 472 F.3d at 187. If a plaintiff makes the requisite showing, "the court proceeds to the second stage to determine whether the prison's policies are justified despite the imposed burden." *Richardson v. Clarke*, 52 F.4th 614, 622 (4th Cir. 2022). And "the policies must represent the least restrictive means of furthering a compelling governmental interest." *Id.*; *see Holt*, 574 U.S. at 357-58; 42 U.S.C. § 2000cc-1(a).

24

Washington fails to state a claim regarding alleged interference with his religious practices. The amended complaint, ECF 7, offers no details about how the right to practice his faith has been impeded. Instead, Washington asserts, without factual support, that he has been prevented from acting as "a registered ordained minister" and "as a protected registered non-profit" organization. ECF 7 at 7. He does not explain what personal religious exercise has been impeded or how his personal religious practice has been substantially burdened. Nor does he identify which, if any, Defendant was responsible for the alleged interference with his religious practice. As such, this claim, to the extent Washington even intended to assert it, must be dismissed for failure to state a claim.

### E.    Mail Tampering & Access to Courts

To the extent Washington alleges that Defendants interfered with his access to courts by tampering with his mail, this claim is dismissed. Washington's pleadings include general allegations that his mail was interfered with, in that mail he sent to the federal court in Minnesota was never delivered. ECF 7 at 7. Prisoners have a constitutionally protected right of access to the courts. *See Bounds v. Smith*, 430 U.S. 817, 821 (1977). However,

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis v. Casey*, 518 U.S. 343, 355 (1996).

"Ultimately, a prisoner wishing to establish an unconstitutional burden on his right of access to the courts must show 'actual injury' to 'the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts.'" *O'Dell v. Netherland*,

112 F.3d 773, 776 (4th Cir. 1997) (quoting *Lewis*, 518 U.S. at 355). "The requirement that an inmate alleging a violation of *Bounds* must show actual injury derives ultimately from the doctrine of standing, a constitutional principle that prevents courts of law from undertaking tasks assigned to the political branches." *Lewis*, 518 U.S. at 349. Actual injury occurs when a prisoner demonstrates that a "nonfrivolous" and "arguable" claim was lost because of the denial of access to the courts. *Id.* at 399.

A prisoner claiming he was denied access to the courts must ultimately prove he suffered an actual injury by showing that the defendant's acts hindered his ability to pursue a nonfrivolous legal claim. Conclusory allegations are not sufficient in this regard. *See Wardell v. Duncan*, 470 F.3d 954, 959 (10th Cir. 2006) (denying access to court claim based on allegation that petition for a writ of certiorari had, for unspecified reasons, been dismissed and where plaintiff did not even mention the point on appeal). The right of access to the courts is "ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002).

Importantly here, Washington has not described with any particularity what documents he intended to send to the court in Minnesota and what, if any, impact the court's failure to receive the documents had on any meritorious claim. Additionally, Washington fails to allege with sufficient specificity that any of the named Defendants are responsible for the alleged non-delivery of his mail. To the extent Washington intended to bring a separate cause of action regarding the non-delivery of his mail, he has failed to state a claim because the Amended Complaint does not contain facts with sufficient specificity "to raise a right to relief above the speculative level," and accuses all Defendants without explaining what any of them did to deprive him of his right of

access to the courts. Accordingly, any claims regarding interference with mail and denial of access to the courts are dismissed under Fed. R. Civ. P. 12(b)(6).

F.    **PREA**

Washington generally alleges that while he was housed at Jessup Correctional Institution ("JCI"), PREA[8] protocols were not followed. ECF 7 at 2 (superseding ECF 1 at 3-4). Washington's allegation fails to state a claim against the Defendants in the instant case, who were all employed at NBCI. *See* ECF 32-3, 32-4, 32-5, 32-7, and 32-8. Additionally, nothing in PREA suggests that Congress intended to create a private right of action for prisoners to sue for non-compliance. *See Williams v. Dovey*, No. DKC-15-1891, 2016 WL 810707, at *7 (D. Md. Mar. 2, 2016) (citing cases). Washington's claim concerning PREA protocols is therefore dismissed for failure to state a claim.

G.    **Retaliation**

Washington's retaliation claim must also be dismissed. "The First Amendment protects the right to petition the Government for a redress of grievances, and the Supreme Court has recognized that prisoners retain this constitutional right while they are incarcerated." *Shaw v. Foreman*, 59 F.4th 121, 130 (4th Cir. 2023) (quoting *Martin v. Duffy*, 858 F.3d 239, 249 (4th Cir. 2017) (alterations omitted). To prevail on a First Amendment claim for retaliation, a plaintiff must demonstrate that "(1) he engaged in protected First Amendment activity, (2) the defendant[s] took some action that adversely affected his First Amendment rights, and (3) there was a causal relationship between his protected activity and the defendant[s'] conduct." *Id.* (quoting *Martin*, 858 F.3d at 249). A defendant's conduct adversely affected the plaintiff's First Amendment rights if the conduct "would likely deter 'a person of ordinary firmness' from the exercise of First

---

[8] 34 U.S.C. § 30301, *et seq.*, "Prison Rape Elimination Act".

Amendment rights." *Martin*, 858 F.3d at 249 (quoting *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 500 (4th Cir. 2005)). To establish a causal relationship, the plaintiff first must "show [by direct or circumstantial evidence] that his protected activity was 'a substantial or motivating factor' in the defendants' action." *Shaw*, 59 F.4th at 301 (quoting *Martin v. Duffy*, 977 F.3d 294, 299 (4th Cir. 2000)). That is, "he must show '(1) that the defendant[s were] aware of [his] engaging in protected activity' and (2) 'some degree of temporal proximity to suggest a causal connection.'" *Id.* at 130–31 (quoting *Constantine*, 411 F.3d at 501). Then, "[t]he burden . . . shifts to the defendants to prove by a preponderance of the evidence that they would have taken the same action in the absence of the plaintiff's protected activity." *Id.* at 131. The Fourth Circuit treats prisoners' retaliation claims "with skepticism because 'every act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct.'" *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996) (quoting *Adams v. Rice*, 40 F.3d 72, 74 (4th Cir. 1994)).

In his Amended Complaint, Washington merely mentions "retaliation and non-reply to grievances" in the portion of the Court's form regarding use of the prison administrative remedy procedures. ECF 7 at 2. In his opposition to Defendants' motion, Washington asserts that "many [unnamed] officers" labelled him a "snitch" in retaliation for filing ARPs. ECF 50 at 8. Washington has not provided any additional information regarding his retaliation claim. There are no facts to support a claim of retaliation: he has not specified that any of the Defendants named in his case retaliated against him, nor has he provided any details regarding any alleged retaliation beyond the general assertion that he was labelled a "snitch" for filing ARPs. As such, the retaliation claim is dismissed for failure to state a claim.

### H. Injunctive Relief

Lastly, Washington seeks an order enjoining Defendants from retaliating against him. ECF 7 at 10. His request is denied. A party seeking a preliminary injunction or temporary restraining order must establish the following elements: (1) a likelihood of success on the merits; (2) a likelihood of suffering irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in the party's favor; and (4) why the injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.,* 555 U.S. 7, 20 (2008). Failure to establish one of these elements is fatal to the request for injunctive relief. For the reasons discussed above, Washington has failed to demonstrate the likelihood of success on the merits. Therefore, his request for injunctive relief must be denied.

### III.    CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment is GRANTED. A separate Order follows.


Dated: March 4, 2025                                    _____/s/_____
                                                        Stephanie A. Gallagher
                                                        United States District Judge